UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BONNIE DIXON,

      Plaintiff,

v.                                            Case No.  8:06-cv-51-T-24 MAP

GENUINE PARTS COMPANY,

      Defendant.

_____/

## ORDER

This cause comes before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 28).  Plaintiff opposes the motion.  (Doc. No. 37).  Defendant has filed a reply brief. (Doc. No. 47).

## I.  Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case.  Id. at 325.  Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim.  See id.  When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to

interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial.  <u>Id.</u> at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  <u>See</u> <u>Samples on behalf of Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988).  Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. <u>See</u> <u>Augusta Iron & Steel Works v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988).  A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## II.  Background

Plaintiff Bonnie Dixon works for Defendant, Genuine Parts Company d/b/a/ NAPA ("NAPA").  She contends that she was discriminated against based on her gender when NAPA eliminated her position as an outside sales representative ("OSR") and offered her a position as an assistant store manager (a position that she holds today at a different store location).

In 1999, Plaintiff began her employment with NAPA as an OSR.  She reported to a sales manager, who reported to Al Graese, NAPA's current District Manager.

As an OSR, Plaintiff was responsible for servicing existing customers in her assigned sales territory, as well as developing new customers in her assigned sales territory.  (Plaintiff's

depo[1], p. 143).  OSRs are assigned to geographical areas throughout the Tampa area, and the

OSR position is a commission-only position.  (Graese decl.[2], ¶ 5).   Graese has stated in his

declaration that NAPA does not maintain OSR positions within territories that are not expected

to contain fifty prospective customers that make average purchases of at least $1,000 per month.

(Graese decl., ¶ 5).  Instead, Graese states that a full-time OSR position is not warranted when

there are less than fifty prospective customers that make average purchases of at least $1,000 per

month due to the employee benefits that NAPA pays.  (Graese decl., ¶ 5).  In territories that are

not expected to contain fifty prospective customers that make average purchases of at least

$1,000 per month, the customers are serviced either by NAPA's retail store employees located

within or near that geographic territory or by OSRs in adjacent territories.  (Graese decl., ¶ 5).

In January of 2005, Plaintiff participated in a meeting with Aaron Brooks (NAPA's Area

Manager), Fran Jarmon (NAPA's Human Resources Manager), and Graese in order to set her

sales quota for 2005.  (Graese decl., ¶ 12).  At this meeting, Plaintiff did not identify fifty

accounts in her territory that could potentially achieve average sales of $1,000 per month.

(Graese decl., ¶ 15; Plaintiff's depo, p. 195-197 and Ex. 23 thereto).  Instead, Plaintiff identified

thirty-three accounts and stated that she did not believe that fifty accounts that could potentially

achieve average sales of $1,000 per month existed in her territory.  (Graese decl., ¶ 15;

Plaintiff's depo, p. 197, 200).  As a result, Graese told Plaintiff that her OSR position would be

eliminated.  (Plaintiff's depo, p. 200).

Plaintiff's OSR position was the only one eliminated in January of 2005.  (Graese decl.,

---

[1]Doc. No. 29

[2]Doc. No. 28

3

¶ 14.  While there is evidence that a male OSR in the Tampa area, Robert Garner, also may not have identified fifty accounts that could potentially achieve average sales of $1,000 per month during his 2005 quota-setting meeting, Garner's OSR position was not eliminated.[3]  (Garner depo[4], p. 26-28).

Rather than terminating Plaintiff's employment, Graese offered to place Plaintiff in a vacant assistant store manager position that had a base salary of $32,000.  (Plaintiff's depo, p. 200-01).  Plaintiff accepted the assistant manager position.  (Plaintiff's depo, p. 201).  To date, Plaintiff's OSR position has not been reinstated.  (Graese decl., ¶ 18; Plaintiff's depo, p. 204).  After her OSR position was eliminated, some of Plaintiff's former accounts were serviced by two male OSRs in adjacent territories, and the rest of the her former accounts were serviced by male and female employee's at NAPA's Causeway retail store.[5]  (Graese decl., ¶ 18).

### III.  Motion for Summary Judgment

Plaintiff asserts a claim for gender discrimination under Title VII and the Florida Civil

---

[3]Garner's deposition testimony on this issue is conflicting.  At one point, he states that during the quota setting process with Brooks, he did not identify fifty accounts that could potentially achieve average sales of $1,000 per month.  (Garner depo, p. 26).  However, on the next page of his deposition, he states that he identified more than fifty accounts during the quota setting process.  (Garner depo, p. 27).  NAPA argues that when Garner said that he did not identify fifty accounts, he was referring to the account review phase rather than the quota setting phase.  However, such an interpretation is not the only interpretation one could have when reading Garner's deposition testimony, and since the Court must construe the evidence in the light most favorable to Plaintiff, the Court finds that a genuine issue of material fact exists as to whether Garner identified at least fifty accounts that could potentially achieve average sales of $1,000 per month.

[4]Doc. No. 45

[5]Graese has stated that there were no female OSRs assigned to the two sales territories adjacent to Plaintiff's former sales territory to whom her former accounts could have been assigned.  (Graese decl., ¶ 18).

Rights Act ("FCRA") due to the elimination of her OSR position.[6]  NAPA moves for summary judgment on these claims, arguing: (1) Plaintiff cannot establish a prima facie case of gender discrimination, because she cannot show that she was subjected to an adverse employment action, that similarly situated male OSRs were treated more favorably, or that she was qualified for the OSR position; (2) Plaintiff's OSR position was eliminated for a legitimate, non-discriminatory reason; and (3) Plaintiff cannot show that NAPA's reason was pretextual. Accordingly, the Court will address each argument.

### A.  Prima Facie Case of Gender Discrimination

Plaintiff has asserted a disparate treatment claim, which can be proven using direct evidence or circumstantial evidence.  See Burke-Fowler v. Orange County, Florida, 447 F.3d 1319, 1323 (11th Cir. 2006)(citation omitted).  Plaintiff contends that she has both direct and circumstantial evidence of disparate treatment.  Accordingly, the Court will analyze Plaintiff's evidence.

### 1.  Direct Evidence

"'Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact in issue without inference or presumption.  Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [a protected characteristic] constitute direct evidence of discrimination.'" Tippie v. Spacelabs Med., Inc., 180 Fed. Appx. 51, 54 (11th Cir. 2006)(quoting Bass v. Bd. of County Commissioners, Orange County, Florida, 256 F.3d 1095, 1105 (11th Cir. 2001)).  "[S]tatements that are open to more than one interpretation do not constitute direct evidence of [gender] discrimination."  Carter v. Three

---

[6]FCRA claims are analyzed using the same analytical framework as Title VII.  See Harper v. Blockbuster, 139 F.3d 1385, 87 (11th Cir. 1998)(citations omitted).

Springs Residential Treatment, 132 F.3d 635, 642 (11th Cir. 1998)(citation omitted). Furthermore, "[b]ecause statements of discriminatory intent must be made by a person involved in the challenged decision to constitute direct evidence of discrimination, 'remarks by non-decision makers or remarks unrelated to the decision-making process itself are not direct evidence of discrimination.'" Hampton v. City of South Miami, 186 Fed. Appx. 967, 970 n.3 (11th Cir. 2006)(quoting Bass, 256 F.3d at 1105).

In the instant case, Plaintiff identifies two incidents that she contends are direct evidence of discrimination. One of the incidents involved an unspecified comment by Mike Conroy. (Plaintiff's depo, p. 249-50). Since Plaintiff has not identified what Conroy allegedly said, the fact that he may have made an inappropriate statement to her cannot be direct evidence of discrimination. Furthermore, since there is no evidence that Conroy was involved in the decision to eliminate Plaintiff's OSR position, his statement is not direct evidence of discrimination.

The other incident identified by Plaintiff is a comment by Al Graese in the Spring of 2003 that Plaintiff needed to find a rich husband and stay at home. (Plaintiff's depo, p. 243-44). While Graese was involved in the decision to eliminate Plaintiff's OSR position, his comment is not direct evidence of discrimination. His comment, which was made more than a year-and-a-half before the decision to eliminate Plaintiff's OSR position, does not prove that her position was eliminated due to Plaintiff's gender. Rather, such evidence requires an inferential leap in order to reach the conclusion that he eliminated Plaintiff's OSR position based on her gender.

Accordingly, the Court finds that there is no direct evidence of discrimination. As such, Plaintiff must produce circumstantial evidence of discrimination in order to survive NAPA's motion for summary judgment.

**2.  Circumstantial Evidence**

Circumstantial evidence of discrimination is evaluated under the McDonnell Douglas burden shifting framework.  See Burke-Fowler, 447 F.3d at 1323.  In order to establish a prima facie case of disparate treatment, Plaintiff "must show: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job."  Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999)(citations omitted).

NAPA contends that Plaintiff cannot establish the second, third, and fourth elements.  However, as explained below, the Court rejects NAPA's argument and finds that Plaintiff has established a prima facie case of disparate treatment.

**a.  Adverse Employment Action**

NAPA first contends that Plaintiff was not subject to an adverse employment action when her OSR position was eliminated, because (1) she initiated the elimination of the position, and (2) the assistant store manager position she accepted was a lateral transfer.  The Court rejects these arguments.

An adverse employment action is an ultimate decision that causes a serious and material change in the employee's compensation, terms, conditions, or privileges of employment.  See Allen v. U.S. Postmaster General, 158 Fed. Appx. 240, 243 (11th Cir. 2005)(citation omitted); Davis v. Town of Lake Park, Florida, 245 F.3d 1232, 1239 (11th Cir. 2001).  "[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action."  Davis, 245 F.3d at 1238 (citations omitted).  Instead, "the employment action must be materially adverse as viewed by a reasonable person in the circumstances."  Id. at 1239 (citation omitted).

7

NAPA argues that Plaintiff was not subjected to an adverse employment action, because Plaintiff initiated the elimination of her OSR position by stating that she did not believe that her territory contained fifty accounts that could potentially achieve average sales of $1,000 per month and then requesting to be placed in a part-time Customer Sales and Service Representative ("CSSR") position.  This factual issue is disputed.  Plaintiff submitted a declaration in which she states that she only asked about the CSSR position after Graese told her that her OSR position was eliminated.  (Plaintiff's decl.[7], ¶ 3; Plaintiff's depo., p. 200, 202).

Additionally, NAPA argues that Plaintiff was not subjected to an adverse employment action because the assistant store manager position she accepted was a lateral transfer.  Plaintiff responds that it was an adverse employment action because she is required to work more hours and makes less money in the assistant store manager position.  (Plaintiff's decl., ¶ 1, 2).  Plaintiff points out that her income is capped in the assistant store manager position, while it was not capped when she was an OSR (since an OSR is a commission-based position).  (Plaintiff's decl., ¶ 1).  Furthermore, Plaintiff points out that when she changed positions, the paperwork indicated that it was a demotion.  (Doc. No. 38, Ex. 12: Status Change Request).  Accordingly, the Court finds that there is a genuine issue of material fact as to whether Plaintiff suffered an adverse employment action.

### b.  Similarly Situated Male OSRs

Next, NAPA contends that Plaintiff cannot show that similarly situated male OSRs were treated more favorably than she was treated.  As explained below, this is a disputed factual issue.

"'To show that employees are similarly situated, the plaintiff must show that the

_____

[7]Doc. No. 38

employees are similarly situated in all relevant respects.'" <u>Cooley v. Great Southern Wood</u> <u>Preserving</u>, 138 Fed. Appx. 149, 157 (11th Cir. 2005)(quotation marks omitted)(quoting <u>Knight</u> <u>v. Baptist Hospital of Miami, Inc.</u>, 330 F.3d 1313, 1316 (11th Cir. 2003)).  In the instant case, Plaintiff has pointed to evidence, that when construed in the light most favorable to her, shows that a male OSR in the Tampa area, Robert Garner, may not have identified fifty accounts that could potentially achieve average sales of $1,000 per month during his 2005 quota-setting meeting, but his OSR position was not eliminated.  As such, the Court finds that there is a genuine issue of material fact regarding whether a similarly situated male OSR was treated more favorably than Plaintiff was treated.

### c.  Qualifications for the OSR Position

Next, NAPA contends that Plaintiff cannot show that she was qualified for the OSR position.  However, the Court finds that there is a genuine issue of material fact on this issue.

### B.  Reason for the Elimination of Plaintiff's OSR Position

Since Plaintiff has established a prima facie case, the burden shifts to NAPA to proffer a legitimate, non-discriminatory reason for the elimination of her OSR position.  <u>See</u> <u>Mosely v.</u> <u>Meristar Mgmt. Co., LLC</u>, 137 Fed. Appx. 248, 251 (11th Cir. 2005)(citation omitted).  NAPA's burden is exceedingly light.  <u>See</u> <u>id.</u> (citation omitted).

Once NAPA proffers a legitimate, non-discriminatory reason, Plaintiff must come forward with evidence, including the previously produced evidence establishing a prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by NAPA were not the real reasons for the elimination of her position.  <u>See</u> <u>id.</u> (citation omitted).  The ultimate burden of persuasion rests on Plaintiff in cases involving merely circumstantial

evidence.  See id. (citation omitted).

NAPA proffers its reason for eliminating Plaintiff's OSR position: Plaintiff did not identify fifty accounts that could potentially achieve average sales of $1,000 per month because she believed that such accounts did not exist, and she requested that she be transferred to a CSSR position.  As such, NAPA contends that it determined that Plaintiff's OSR position was not warranted.

NAPA argues that Plaintiff cannot show that this reason is pretextual.  However, as explained below, the Court finds that Plaintiff has raised a genuine issue of material fact regarding whether NAPA's proffered reason is pretextual, and as such, NAPA's motion for summary judgment is denied.

To begin with, the Court has already found that there is a genuine issue of material fact regarding whether Plaintiff requested to be transferred to the CSSR position prior to the elimination of her OSR position.  Furthermore, in support of her argument that NAPA's proffered reason of her failure to identify fifty accounts is pretext for gender discrimination, Plaintiff points to NAPA's Sales Territory Analysis Reports from April of 2004 through December of 2005.  (Doc. No. S-1).  These reports show that none of the OSRs in the Tampa area had fifty accounts that had average sales of $1,000 per month in any month during that period.  NAPA concedes this fact.  (Doc. No. 47, p.5).  However, NAPA contends that the failure to maintain fifty accounts that generate average sales of $1,000 per month is irrelevant to NAPA's decision to eliminate Plaintiff's OSR position, and instead, the critical issue is whether an OSR can identify a minimum of fifty accounts that could potentially achieve average sales of $1,000 per month.

The Court finds that a reasonable fact-finder could conclude that NAPA's proffered reason is pretextual based on the fact that OSRs are not required to actually maintain fifty accounts that generate average sales of $1,000 per month, as seen by the April 2004 through December 2005 Sales Territory Analysis Reports that show that none of the Tampa OSRs actually maintained fifty such accounts in any month during that period.  As such, a reasonable fact-finder could conclude that if an OSR is not required to maintain fifty such accounts, eliminating Plaintiff's OSR position for failing to identify fifty such accounts may not be the real reason that her OSR position was eliminated.

Additionally, the Court notes that NAPA contends that it determined that a full-time OSR was not warranted based on Plaintiff failing to identify fifty accounts that could generate average sales of $1,000 per month and her belief that such accounts did not exist.  However, Graese stated in his deposition that he believed that there were more than fifty accounts in Plaintiff's former sales territory that could generate average sales of $1,000 per month, which undermines his decision to eliminate her OSR position on the basis that the position was not warranted. (Graese depo[8], p. 47).  Furthermore, there is evidence that Robert Garner may not have identified fifty accounts that could potentially achieve average sales of $1,000 per month during his 2005 quota-setting meeting, but his OSR position was not eliminated, which further calls into question NAPA's proffered reason.[9]

_____

[8]Doc. No. 29

[9]The Court notes that NAPA argues that it is entitled to an inference that no discriminatory animus motivated Graese's decision to eliminate Plaintiff's OSR position because Graese hired Plaintiff.  See Williams v. Vitro Services Corp., 144 F.3d 1438, 1443 (11th Cir. 1998).  However, while the fact-finder may consider such "same actor" evidence and infer that no discriminatory animus motivated Graese's decision to eliminate Plaintiff's OSR position, that inference is not strong enough at this stage of the litigation to outweigh Plaintiff's evidence of

**IV.  Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that Defendant's Motion for Summary

Judgment (Doc. No. 28) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 8th day of June, 2007.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

---

pretext.  See id.